19-4050 and you may proceed when you're ready. Thank you, Your Honors. May it please the Court. My name is April Hollingsworth. On behalf of Karen Byrd, I want to start by talking about the precedent that this case could set. This court in Wittenberg v. Warner Enterprises said that one of the comparative advantages this court has over the trial court in deciding whether to hold a new trial is that you can see how this case fits in the wider stream of cases and precedent. It's a precedent to pass judgment after more time to consider than the district court had. And so, in this case, of course, we have Karen Byrd was asserting a First Amendment right, but all 1983 cases involve constitutional rights. So whether it's a First Amendment, whether it's a Fourth Amendment, or 14th Amendment case, they're all meaningless. Those rights are meaningless if at the end of the day you get a trial and the defense can argue that the military career person who's the decision maker or the wrongdoer, as the case may be, because of his military career, is unassailable. That he wouldn't violate someone's constitutional rights. Counsel, before you get too far into that, our issue, is it not denial of a motion for new trial? Well, so I mentioned... What is our scope of review on that issue? Abusive discretion, Your Honor. All the issues raised are abusive discretion, and I submit that the issue is really the allowance of evidence into the case about military career, the extent to which that went on, and then allowing that use in closing. So even if we hadn't filed for a motion for new trial, that's still the standard, but I think that more specifically looks at the issues to be addressed in this case. I mentioned in the reply that the case law regarding denials of a new trial looks at a whole bunch of issues, but I think we should stick to, was that evidence about the military properly allowed? And was the decision to allow it to go on at closing, to allow counsel to invoke it, use it to claim that... Well, counsel, hasn't the district court already said that it thought what happened here was probably vouching and was probably bolstering? Yes. But that at the end of the day, don't you have to show prejudice? Yes. Have you? I believe that we show prejudice because, I mean, most of the case law out there looks at whether the jury's verdict was too high, given the facts, but there are cases that look at a defense verdict and say, given the defense verdict, was the influence, the improper statements, were they potentially influenced that verdict? And I think here that's, yes, I looked at the Seventh Circuit in the Stoling case, looked at the defense verdict in that case and said, well, the evidence in favor of the defense was not overwhelming. And given that the evidence wasn't overwhelming, they granted a new trial. So in this case... Counsel, if your whole problem here is unnecessary and improper evidence or vouching or bolstering as regards this one witness, did the jury believe that witness? I mean, don't we have the verdict form that shows that they didn't believe him? Right, and the issue is not, well, there's extents to which they didn't believe him, right? I mean, I believe that the statements to the press had nothing to do with her termination and therefore found on the one question that it was at least a substantial or motivating factor. And the fact that they then found, given the evidence, given that they then found on the second question that they would have terminated her anyway. And the evidence at trial was, I mean, we're not disputing there were issues between Karen Bird and Kelly Davis, but nothing that occurred between the summer when he was saying things were going well and October, November, December when things clearly were not going well. So the only real explanation in the evidence was that it was the protected activity. And we don't know what the jury thought. You can't know in any of these cases. They don't come out and tell you that it was because of the undue or the improper. But what we can surmise from this case, given the differing, the distinctions in those two questions, which were pretty close questions. I'm not sure I understand the difference between the two. But at any rate, the jury could have decided, A, well, he lied a little bit, but didn't lie a lot. Or they could decide that we don't want to find against a guy who's the subject of a movie that just came out. So as we look at the verdict form, you would agree the jury did not believe him on question three, the motivating factor question. Right. But they may have believed him on question four. That is, they would have fired her anyway. Part of his testimony went to why she was ultimately fired. Right. Is that how we're to parse this? Well, the way I think we should parse it is that it may not have believed him, but they didn't want to find against a war hero who had fought for our country. And counsel put it to them like that. Basically, you know, how dare the plaintiffs say that this guy who fought for our country and fought against the Taliban would violate someone's constitutional rights? You'd agree, though, that some background information about a witness including his military career. Correct. But, but, yeah, I don't disagree that it's hard. When did. When did. You know, some background prejudicial. Well, I don't know that I can say exactly when that was. But I can say that, you know, like I said, I think that I hindsight being 2020 that I let it go on longer than I should have. But at the but I did object at the point when when counsel asked Mr. Morris, and what were you doing when you got, you know, when you lost your eye or I got injured, however, he said it. And that clearly has no bearing on this case. And I objected to relevance and that the test for relevance is is likely to make a fact of consequence more or less probable. And there is nothing about his how he got injured, how he injured his eye and what he was doing in Afghanistan. It makes a fact of consequence in this case more or less probable. So you think the objection should have been under for 403 is unduly prejudicial at that point. I think that is an that is an equally valid objection, but certainly relevance is as well. You know, when you're in the in the situation, it can be relevant still because, you know, I'm sure you're opposing counsel say, well, it's relevant for the jury to get to know a person so they can assess whether he's a truth teller or not. But at some point, relevant information becomes prejudicial. That's your basically your argument. Right. And. Right. I think I think getting to know someone and and bolstering their credibility are two related but but different things and one's OK and one's improper. And in this case, the the the evidence that was gotten into about his war injuries was improper. It was it was it was not to allow the jury to get to know the witness. It was to bolster his credibility. And that is improper character evidence. So there was that that objection could have been made to, you know, all these things are are great in hindsight. But at any rate, I think the the objection that was made at the time as to relevance was entirely appropriate because that the extent to which the term that that evidence took at that point was was not it wasn't relevant to any of the issues to be decided. It was being used to play to the jury's prejudices, to their patriotism and to make them unwilling to find against this witness who was the the witness. He was the only decision maker and the only one whose testimony about his motives really mattered. So when do you contend the bolstering happened? Did it happen when they were eliciting this testimony or did the bolstering occur during closing argument? Well, I think bolstering is considered counsel's axe. So I think the intent to use it as bolstering clearly started in the in the questions eliciting the information about his war wounds, about, you know, the Purple Heart Award, the 60 Minutes, all that. So it started in the preparation for it started in the direct exam. And that's why I said in this case, you know, there's a lot of case law talking about looks, looks, looking at the closing arguments and whether they properly, you know, used the appropriate inferences from the evidence and that sort of thing. But in this case, we have to go back to the evidence that was entered and look at whether it was proper and then also whether it was properly used in closing. And I think both those are errors that compounded each other. So by the time we got to closing, there was already this prejudicial evidence in and had it just been left there, maybe we wouldn't be here today. But the fact that counsel then used it to bolster his credibility to say he wouldn't lie to paint him as a war hero and say that, you know, basically, like I said, how dare you, how dare they find a challenge him with a constitutional claim was clearly improper. Here where the where the questioning was maybe not an abuse of discretion, but allowing the bolstering by or vouching by the attorney in closing be erroneous and constitute abuse of discretion. I'm sorry, I'm not trying to. Yeah, so the questioning itself of tell us about your military history and being on 60 minutes. Is it possible that that was was not an abuse of discretion, but that there still could be an abuse of discretion in the closing argument in the manner it was used. I think that you have to look at the in the case of saying you look at this trial and in the entire context. So I do think that allowing someone a witness a prime witness to talk about being on 60 minutes is improper and that evidence shouldn't have been allowed in. And a case. I think we cited it starts with a be a Supreme Court case that said it's actually the Judges duty to stop that kind of questioning when it's just to arouse passion and sympathy, but certainly it crossed the line again in closing. I'd like to reserve the rest of my time. You may. Thank you, Mr Preston. You can commence when you're ready. Thank you, Your Honors. May it please Gordon Council. The court is not reviewing whether the district court abused its discretion by allowing Morris to testify about his military service. Instead, it's reviewing whether the district court abused its discretion by denying birds motion for a new trial. The district court correctly ruled, citing ample case authority. They quote Morris's background. Morris's testimony concerning his military experience was relevant and admissible as a background evidence such evidence help the jury to get to know the witness credibility. Bird fails to cite a single case that would hold. Otherwise, the cases she does side support that proposition. Significantly, the only objection made at trial and in post trial motions was a rule 401 relevancy. And of course, trial courts have great discretion with as to relevance. The district court never ruled on an unfair prejudice rule 403 objection because none was made. Regardless of whether the conduct was proper or improper. Appellee should win this case under the Wittenberg test in Wittenberg. This court said that the district court is in the best position to determine the prejudicial effect of improper arguments and that's whether a new trial is warranted. The district court in this case wrote a lengthy and very careful opinion. And concluded under Wittenberg in summary that the remarks lasted only a few minutes. The court instructed the jury on multiple occasions that attorney arguments are not evidence and nothing indicates that these arguments clearly influence the verdict or obviously prejudice. Counsel did the district court instructed jury to disregard any part of the argument after it was made. No, the objection was made. No. But let me go to that point. I think it's the third element that Briscoe was asking about under Wittenberg Which is the effect of the improper remarks. Bird's arguments about the alleged effects are purely speculative. She argues in her brief quote the testimony could have been construed by the jury to make them unwilling to find against Morris close quote. She noted that all the district court may be correct in determining that quote any arguably improper attempts to bolster or vouch for Morris's credibility did not work close quote It is also possible that it did work. And that is the only reason the jury found this is all speculation. This court has expressly stated That even if some statements are improper quote a judgment will not be disturbed unless it clearly appears to the challenged remarks influence the verdict. Bird cannot link the allegedly improper comments to the verdict. This is like the bird case. Where, quote, given the strength of the evidence that is a tall order and that is the overwhelming evidence that Miss Bird was terminated for legitimate non protectoral reasons. Bird says it's a close case. Which implies the jury could have gone either way and ruled in favor of the appellees based on the undisputed permissible evidence. This alone is an admission that it does not clearly appear that the challenged remarks influence the verdict under bird was was Morris her direct supervisor. No, he was the department head Davis direct supervisor. Okay. And how many people were involved in the decision to terminate her Morris made the decision alone. Morris had decided to terminate bird a year before in December 2010 because of her insubordination and her inability to work with Davis or direct supervisor. So that that fact that he makes the decision to terminate her. You said solely made the decision. Yes, that was the So, so his testimony and how the jury saw him would be very pivotal. Would it not It was no question. But let me go to the point that you raised about the inconsistent verdicts bird is raising the point that the resolution of the fourth element. Garcetti Pickering test. The jury's finding that the city's belief that bird leaked information to the press about Andrea, the cat was a substantial or motivating factor in the decision to terminate birds employment is somehow inconsistent. With its response to the fifth element of the Garcetti Pickering test that the city would have terminated bird in the absence of any belief that she leaked the information. This these findings undercut the entire premise of birds argument. Because Morris testified that he did not terminate bird based upon a perceived belief that she had engaged in free speech. That as a result that first finding the answer to question three. Shows that the jury did not believe Morris's testimony as to that point. Therefore, if there was an attempt to bolster or vouch for Morris, it clearly did not impact the jury verdict. And this really comes down in. This is really a mixed motive case. Where the speech must be the but for reason for the termination under both this court's McKinnon and Trent decisions following the Mount healthy and Hartman Supreme Court decisions. If retaliation as the Supreme Court stated in Hartman was not the but for cause for the discharge the claim fails for lack of causal connection. Between the unconstitutional motive and resulting harm despite proof of some retaliatory animus in the officials mind. Of course, but for causation is critical in a mixed motive case to prevent an employee from being in a better position as this court as the Supreme Court held in Mount healthy. As a result of the exercise of constitutionally protected conduct, then she would have occupied had she done nothing. Well, the fact that this is, as you've said, a mixed motive case doesn't that bleed into what councils argued about part of Morris's testimony may have been believed and part of his testimony may not have been believed So we get back and we get back into the pond of, well, it's important how much vouching and bolstering was done to pump up Mr. Morris as a witness. Well, the part that was believed was his was the long history of plaintiffs in subordination or refusal to work with Davis and the complete breakdown of their relationship. But I think it's instructive to look at the types of cases where a new trial has been granted. And if you look, for example, at the Wittenberg case. There the court ordered a new trial where in closing council referred extensively to evidence not in the trial record and without apparent provocation council flooded his argument with abusive references to opposing Party and Council and moody the plaintiffs council violated multiple in the limiting rulings and made personal attacks on opposing witnesses and counsel. As Hollingsworth was referring to the very case. It's a 1943 case and I asked the court and that she says that's why in a following that case. Judge first should have stopped it right there, but very is an incredibly different case from this case was decided in 1943 and I asked the court to look at footnote three of that decision. Where, and this is a US attorney violating his trust. Which was important to the court in deciding this and this is what he said, I'm just going to quote a part of it. It goes on at some length. This is war harsh cruel murderous war. There are those who right at this very moment are plotting your death and my death plotting the death of you and our families. It is a fight to the death skipping down the American people are relying upon you, ladies and gentlemen, for their protection against this sort of crime, just as much as they are relying upon the protection of the men who man. The baton peninsula. So we can always say there's a case that's worse. I guess our issue is, is this bad enough I submitted is not the court found there was no bolstering but presumed to bolstering And still held it didn't rise to the level and I submit that As to the improper conduct as far as vouching I did not make personal assurances. I did not express a personal belief that Morris would not. Well, you said he would not lie. Well, yes, a man with this military history would not lie. It was relying on That's pretty strong and and when you're in a closing. Those are the last words, the jury hears No, they actually heard Miss Hollingsworth response to that. Right. But I mean, from you. Yes, point of view, he would not lie. And you're saying Based upon who he was based upon his His, his life. What, what the jury knew about him, but your honor this case. There is overwhelming evidence to support the reason that he was term terminated according to the city. Instead of terminating her in December 10 as Morris desired Davis gave her a memo under of understanding to put her on notice of her deficiencies. For failure to support Davis or insubordination and bird admitted at that point she knew her job was in jeopardy and she did nothing to improve on October 31 2011 Morris was in a meeting with Davis and Bird and it was obvious to him that bird absolutely loathed and detested him and could not work with him. That the relationship was completely broken and he confirmed that with her in a subsequent meeting on November 9 In the meantime, birds real complaint about Davis was that he belittled and bullied her and she filed a formal complaint about that on November 2 And in the following day, she met with the human resource manager Charlene George to discuss that and in meeting. Bird and she recorded this. It was some of the over 100 hours of conversation. She she surreptitiously reported She said six times that she could not even look at Davis. She could not look him in the eye and she said her interpersonal issues with Davis could not be resolved. This caused George to testify at trial that the meeting broke her heart quote as a human resource manager, because she didn't know what else she could do. She had talked to both of them over the years. Given them counsel Davis had made an effort to change bird never made any effort and and in that meeting bird gave George a recording that she said showed how he bullies and belittles me We can go back to the background information. I really, you know what what relevance at all would be with the Rose Parade and the movie have you know what what relevancy with that have it all in this case. Well, the movie was in closing argument. I never said it was the movie was about him. And if you look at the transcript. That's what the court included This. I mean, these were the life defining experiences that shaped him over years and years and the jury needed to know about that to evaluate him to establish his credibility, but I submit again that even if you assume that was improper vouching and assume as a district court did that there was bolstering it does not rise to the level. Particularly when you have such overwhelming evidence this court itself concluded after reviewing her employment record.  We must conclude. This is a quote the city discharge bird because she was a difficult employee to manage treated her direct supervisor David Davis with disdain. Refused to follow his directions and so discord and anxiety at the animal shelter, close quote. It then stated, quote, the stated reasons for firing bird or in subordination, for example, was not contextual close quote and later held quote no reasonable jury could conclude otherwise close quote, that's the law of this case. And when you have that sort of evidence, whereas the court held in Trent, the person would have been fired. Anyway, the fact that there was Some retaliatory animals simply does not carry the day, particularly given the level of The alleged improper conduct here. Thank you. Okay, thank you, Mr. Preston. We have some rebuttal time for Miss Hollingsworth. There you go. Go ahead. Am I okay. So councils reliance on the testimony of Lane Morris proves the point that I've been trying to make that The day of danger here and painting or being allowed to paint a prime witness as a war hero and and councils arguments just now show that he's of the firm belief and many people That someone's war credentials and makes them unassailable. And that's the kind of thing that we can't be putting in front of a jury, because the reality is, although a lot of people feel that way that that's not It doesn't go to whether lane Morris fired this bird because she had of the speech to add to the press leaks to the press so Council has just exemplified the day or I asked in the words of This is now just as gorgeous and birth of the court not to run out. Thank you. Thank you, counsel. We appreciate the arguments. I think they work pretty well. Despite the lack of in person. Persuasion case shall be submitted and counsel, you're now excuse